All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Okay. So good morning, everyone. In these unique circumstances, thank you for your willingness to participate in our virtual court. And Judge Hawkins and I would like to thank Judge Rastani from the Court of International Trade who's sitting with us on assignment for a while. Thank you, Judge Rastani. Welcome. Okay. We only have two cases for argument this morning. We're going to hear Miracle v. Hobbs first. When we finish with the argument in Miracle, we'll take a short five-minute recess so that the audiovisual crew can make sure we have a proper connection with the next case. So Miracle v. Hobbs, go ahead, counsel. Good morning, Judge Paez, and may it please the Court. My name's Elizabeth Frost, and I'm here today on behalf of the appellants. I'd like to reserve three minutes for rebuttal. Just like the robocall law in victory processing, the strikeout law imposes an additional hurdle to political speech based on its content, in the process disproportionately disadvantaging a campaign with less resources. The state's interest in subpoena compliance does not allow it to mandate harsher or different penalties related to a recipient's engagement in a specific kind of speech. Thus, when this Court considered an Arizona law that imposed special penalties on soliciting day laborers from stopped cars and key traffic, the Court said that, of course, Arizona may prohibit people from blocking traffic, but it may not, consistent with the First Amendment, use a content-based law to target individuals for harsher or more lenient punishment because of the message they convey. Counsel, how is this case different than the Ninth Circuit's case in Wynn v. Ripple, involving a Washington statute that required the disclosure of the names and addresses of paid circulars? Well, Your Honor, in that case, well, first of all, in that case, the Court found that it was unconstitutional. I think in this case, you have an even stronger, you go straight to, it's a content-based claim in this case. Wynn v. Ripple didn't actually raise a content-based claim. Had they done so, then I think that's potentially the conversation they would have been having. I think, I want to make sure I understand the question correctly. In the way that it's different is that this is a direct regulation on the speaker, and it is the additional punishment, the penalty that is threatened, is connected directly to the conduct in which they engage. So the best way to think of this is, frankly, you could hire the same person to solicit signatures for initiative petitions or to solicit signatures for nomination petitions. And the only difference is the first person is threatened with the penalty. They could be talking to the same voter. Everything else is the same because of the communicative content they're involved in. And I think what this Court said in Arizona Right to Life, what this Court said in Hess Committee, when you have this content-based discrimination, then it doesn't matter whether you think of it as Anderson-Burton or going straight to strict scrutiny. You end up in the same place. This case is also- I have a question about the state of Ninth Circuit law at this point. We had the, I think it was the Preet case, that basically used an older way of looking at content-based speech. But nonetheless, that looks to be the Ninth Circuit law unless the Supreme Court has overruled it. I'm not sure that- So my question is, is the sign case close enough to this to actually dispense with the Ninth Circuit ruling on this? Are we still bound by the Ninth Circuit case of Preet? That's my question. So I think there's a couple things about Preet. And I think the very first one you put your finger on in the question itself, which is the footnote the state relies on in Preet, makes the same mistake that this panel made in Reed in talking about when there is a content-based restriction. It went straight to purpose, which Judge Hawkins, in response to your question, one of the other things I wanted to point out is in this case we actually have a concession from the Secretary of State that the purpose of the law was also to infringe upon speech, which you didn't have him win. So Judge Rustani, going back to Preet, to the footnote in Preet, it goes straight to purpose. And what Reed says, and what Reed said in the Ninth Circuit, frankly, did wrong in the decision below in that case, was exactly that. It went straight to purpose. You don't even get there if you look at the content, the face of the content. Preet seemed to misunderstand this and said, look, we don't have any evidence here that the legislature was trying to target this kind of speech to hinder it in any kind of way. That's actually another way that I think Preet is different. And frankly, I think if you felt you could still reconcile Preet with this case, because here you have admission that in fact what the legislature was trying to do was target this kind of speech. So even under Preet's, I think, mistaken application of the law, which doesn't survive Reed, that you go straight to purpose. Is this a facial challenge or an as-applied challenge? It's a facial challenge, Your Honor. So we treat your motion for a preliminary injunction as if it were filed at the onset of the litigation? I'm sorry, Your Honor, I don't understand the question. There's no difference between, for the purpose of considering the statute and its constitutionality, between a motion for a preliminary injunction filed right out of the box at the start of litigation as opposed to when you filed it now. It's a strict facial challenge. We filed the motion for a preliminary injunction one week after we filed the complaint. We filed it pretty much immediately right out of the box. But I don't think it matters. I think the reality is, even if we'd waited longer, there's certainly no case law that said we waited too long. And even if we'd waited longer, here we are talking about a facial-based claim that directly penalizes speech for engaging in a particular kind of communicative conduct. And I submit that is so dangerous for the First Amendment. I think it's helpful to step back and think about why is it that facial challenges are treated so differently? And I think it actually also speaks to the district court's view of this as a situation where maybe some Arizona state judges didn't manage the report or mismanaged the report really well. The reason we treat content-based claims so different is because of the very threat that the government either might be using it in order to put its thumb on the scale against a certain kind of speech, or that even if that's not their intention now, some bad actor in the future might do that. And so... Paying speculators are required to register with the Secretary of State of Arizona? Correct, Your Honor. Do you have a problem with that? Not at all, Your Honor. And they now sign an affidavit, I think, agreeing to the jurisdiction of the courts of Arizona? Correct, Your Honor. You have a problem with that? No, Your Honor. And there's no indication that any of... Your complaint is that the statute treats candidate petitions different from initiative petitions, correct? Correct. But paid circulators of candidate petitions and out-of-state circulators of candidate petitions also do both of those things. They also register and they submit to the jurisdiction of the court. And this is actually one of the reasons Arizona has never been able to explain why those generally applicable laws that themselves don't penalize a certain kind of speech more, don't impose an additional penalty on initiative speech, are not enough in order to serve their interests of fraud and subpoena compliance. And that is crucial. I want to be perfectly clear. The injunction we're asking for would not take away from the courts of Arizona the ability to strike signatures even because the circulator doesn't show up. It would restore their discretion to make the choice based on what's in front of them and what is appropriate given the evidence in front of them and given what they see happening in their courtroom, which is exactly what they do, by the way, for volunteer circulators of even initiative petition. And for all circulators of nomination petition. And in those cases they do sometimes strike signatures when people don't show up. They just don't have to. And I think that one of the real ills of this law, and it's one of the reasons you see why it chills speech long before action challenges, is it creates this incentive to subpoena people you would never ever subpoena. Let me ask you one question that bothered me when I read the district court's order. When she goes through the analysis, at one point the district court recognizes that there's a content-based claim but says, I really can't decide it now. It's there, but there might be some problem here on content because of the focus on the initiative circulators. But she says, it's not teed up properly yet. And she did the other analysis. On the Anderson analysis, I don't see a problem. The plaintiffs are not likely to prevail. What was the district court doing by sort of stepping back from the content-based claim? You know, Your Honor, I think the district court was making the same mistake that the district court made in Sanders County, which is the court was understandably reluctant to find that a state law is invalid. But she said, when I took that, and you can tell me if I'm wrong, but as Judge Hawkins was noting, this was a preliminary injunction proceeding where the district court was required to make a pretty quick call on whether or not you were likely to identify the content-based issue. But she said, I think this needs a little bit more development before I'm willing to go there. I mean, she didn't foreclose it by all means. Correct, Your Honor, but that itself was a legal error. Because we treat preliminary injunctions in the First Amendment context different, right? As this court explained in Sanders, the burden is initially on the plaintiffs to make a colorable claim, a First Amendment infringement, which I think the district court's order says we did. And then the burden was supposed to shift to the state to prove that it was still justified. Had the burden shifted the way it was supposed to, there's actually findings in the district court's order itself that indicate the statute can't survive for a couple reasons. Number one, I'm sorry, Your Honor. No, I understand. I don't think she quite went that far. She was very careful to say this content claim. She acknowledged it and clearly recognized it, she said, but I think that it needs more development before I'm willing to take it on. What was wrong with that under the circumstances? Because, Your Honor, she misapplied the law that she's supposed to apply when she's looking at a First Amendment claim. First of all, also – Well, she recognized pre. Right, she recognized pre, and she didn't recognize, first, that it – Well, this gets back to Judge Rastani's question. Does Reed sort of call into question the footnote in pre, such that the district judge should have been on top of it? Yes, Your Honor, I think it absolutely does. I mean, first of all, it lays out the wrong framework, and second, I think it expresses the exact kind of error that the district court was making in Reed. But what I would submit to you is I don't think you have to decide today, and I don't think the district court had to decide, whether every difference between the way that circulators are treated if they're advocating for initiative petitions versus nomination petitions would necessarily always trigger strict scrutiny because there was an alternative here. And that was – That leads to my next question. However we rule today on the preliminary injunction, the discovery, the dispute will go forward before Judge Bolton, and you'll be able to marshal your proof on burden and other issues irrespective of the way we rule, correct? So that's true, but I think there are a couple – Can I start with a yes or no? So, yes. The answer is yes. But in the meantime, I think you have a content-based, facially discriminatory law that is going to hurt Arizona petitions, Arizona circulators, Arizona voters this cycle. And I think that's one of the reasons we look at First Amendment preliminary injunctions differently. Second, with a content-based claim, all the evidence the court needed is there on the statute of things. And it was there in front of the district court to begin with. So if we go back down on the content-based claim, frankly it's a motion for summary judgment. It's not the evidence, because you don't have to go through the factual burden in the same way. You might want to be careful about conceding that the record is complete. You can see your opposing counsel taking notes. You filed this – your clients filed this litigation in 2014? No, sorry. My clients filed this litigation shortly after they both – the voters found out that their signatures had been stricken, which is something they were not aware of. I'm just looking for the date. When did you file it? It was in July of 2019, which was shortly after the initiative – Can I ask a question about Reed? Before Reed, would you have said this was a content-based statute? Yes, Your Honor. I think so. I think so. Because I think if – there's actually – Reed, I think the Supreme Court would say it was there all along. But I think Reed just makes it incredibly clear. If you can't impose different restrictions on things like directional sign versus political sign, the idea that you can penalize speakers for engaging in a specific kind of communicative conduct and not penalize speakers who engage in – Okay. Just tell me what case before Reed would have told you this was content-based? Oh, Your Honor, I may have to come back after I – the cases in my head have all kind of brought together. Okay. It's all right. Why don't we hear from the State, and you can think about that, and I'll give you a couple of minutes rebuttal. Okay. We'll hear from the State. Good morning, Your Honors. Drew Ensign on behalf of the Intervenor State of Arizona. This Court's review in this interlocutory appeal is limited and deferential, and the District Court should not abuse its discretion for a multitude of reasons. Indeed, by the State's count, there's at least seven grounds that all independently require a pregnancy review. Before I get to those, I'd like to turn to Judge Ostama's question about what case would have told you that this content-based theory might be available. And Reed specifically relies on Ward v. Rock v. Racism, which is a 1989 case that set forth the idea that hostility to a message can make out a content-based claim. So Reed is nothing new. It's simply a reiteration and application of Ward v. Rock v. Racism. Therefore, Reed is not intervening authority that can be used for appeal to overruled creeds, and creed remains good law. Turning to the reasons why I think deferments is required here. First... Counselor, can you wait just a second? Yes, of course. Let's sort of get into the weeds on this. What's the rational basis for distinguishing between initiative petitions and candidate petitions? Your Honor, there's a multitude of reasons... I should say there's a multitude of laws that do this, and they're based on several reasons. One is that historically there's been greater rates of... There have been greater concerns, certainly, about the integrity of the initiative process. We've never had a process where the signature validity was 100% or even close to it. We always have challengers. And in the context of nominating petitions, you can rely on political opponents to act as that check. That's not necessarily the case with initiatives that necessarily have natural enemies that can do so. And there's a multitude of different provisions that kind of reflect this. Notably, you want to sign an initiative petition, you actually have to fill out your own information in addition to your signature, and that's so we get more of a handwriting analysis that we can use to compare for forgeries. It just requires many more signatures to get on the ballot for an initiative. Almost by two or three quarters... A follow-on question. Don't the people of Arizona and the legislature under the Arizona Constitution stand on equal footing when it comes to proposing legislation? Yes, Your Honor. The Arizona Constitution absolutely recognizes there are two sources of law-making power, both the people themselves and the legislature. And they both have legislative-making power. Yet the legislature seems to have made it extraordinarily difficult for petition... initiative petition gatherers as opposed to themselves. There's some litigation going on in our district court right now. As I understand the Arizona law, candidates can circulate petitions and sign them online. That can't be done with initiative petitions, correct? That's correct, Your Honor. And notably, Preet addresses this specifically. And what Preet says, the argument of Preet, which is exactly the argument here, is that the plaintiff said it was content-based because it, quote, applies only to initiative and referendum petitions, not to recall or candidate sponsorship petitions. That's Preet 438, F30, 968. And this court expressly held that was not content-based. What this court said there was that measure... and there it was, Oregon's Measure 26 that treated initiative and nominating petitions differently. It said, Measure 26 does not regulate what can be said in an initiative or referendum petition, nor does it adopt or reject any particular subject that can be raised in a petition. Therefore, Measure 26 is not a content-based restriction, and strict scrutiny does not apply. I think that's absolutely controlling here, and as we explained earlier, it's still the law. Do you understand the district court to have really kind of punded on the content-based argument? A bit, Your Honor, although I think it makes sense given the arguments we've seen as refined on appeal. If it points to this argument that it's content-based because of the hostility of the legislature, you could think that perhaps that's a factual issue that requires factual development, and therefore it should be allowed to go past motion to dismiss, and instead the district court needs to make a snap judgment as to the state of the evidence and whether they're likely to prevail. That's what the district court did. We think that's not an abuse of discretion, although we believe that... Do you think the footnote in Preet survives Reed? Absolutely, Your Honor. The principle they're relying on to overrule Preet is one that was well-established at least as far back as Ward v. Rock against racism in 1989, and Reed is nothing but a reaffirmation of that principle. Well, it seems to have changed the landscape somewhat. It makes it pretty clear. The sign ordinance that had the categories and that bothered the Supreme Court significantly. That's kind of what we have here. You have the initiative petitions as well as the candidate petitions. They're treated differently. Your Honor, I think that... And Reed really exemplifies that distinction, and we use that in the recent case that counsel referred to at the beginning of our argument in the robocall case. Your Honor... The categories. I think that's not controlling here for two reasons. Well, I understand. I'm just telling you that Reed seems to highlight the notion of... If you look at that sign ordinance in Reed, it categorized various kinds of signs and posed different burdens. And that's kind of what's going on here, isn't it? I don't believe so, Your Honor. In one sentence, Reed concludes that this court misapplied the standard and rule of law involved. And it's nothing more than a reiteration of the legal standard and an application... I think the robocall case, I think that's victory... Victory processing. Yeah. I think that makes it clear that the content-based test is side-by-side with the Anderson verdict test. But I was wondering if there's anything in the Supreme Court that says the content-based way of getting district scrutiny isn't just... that would lead us to be that it's just part of the Anderson verdict framework. I'm wondering if there's something out there that tells us there's truly two tests or just one test for elections. That's what I want to know. Your Honor, where it's not a pure regulation of speech, there's only one standard, the Anderson verdict standard. That's what this court said and in doing so, it specifically relied on the Supreme Court's decision in Anderson to derive that single standard test that this court has applied multiple times, including in the Saltisic case, which I think is highly persuasive here. There, this court refused to allow a viewpoint-based challenge to an electoral regulation and reiterated the single analytical framework of Anderson verdict applied. And notably, viewpoint discrimination is an even more offensive subset of content-based. And it's undisputed here that the act is viewpoint-neutral. Excuse me, Your Honor, my screen went dark. Yeah, I gave you a softball there. So your argument would be that unless it's viewpoint-based, you're still in the Anderson verdict framework, even if it might be called content-based but not viewpoint-based. But you can't do that now because of victory, right? No, I believe you can, Your Honor, as long as it's not a pure regulation of speech. Now, victory ought to stand by literal regulation of speech, what you could and could not say. I think this is much more like the Rubin case, which said, which clearly was content-based. It said candidates can discuss their occupation but not their status on the ballot. But this court said that because it was viewpoint-neutral, it did not impose a severe burden under Anderson verdict, and it never considered whether it was content-based. And this court indutably looked at Rubin and said, that's further evidence that the single analytical standard of Anderson verdict covers everything. And I note that Rubin, too, actually literally told candidates what they could and could not say. By contrast here, the act in question, it regulates only conduct, not speech. It regulates whether or not you show up in response to a subpoena as you promised to do. That is not speech, and so a regulation of it cannot be a content-based regulation of speech. Now, we certainly acknowledge that it could burden speech, but that's something that's considered through the Anderson verdict framework, not through a freestanding content-based claim. Fourth, I think it's important to note that plaintiffs have not demonstrated that legal remedies are inadequate here. Indeed, they've expressly disclaimed any requirement they do so, saying that they need not wait to do a motion to quash, because it's actually efficient and better in the public interest to have a federal court consider it first. But the requirement of showing that legal remedies are inadequate is fundamental to obtaining an injunctive relief. Nor does this court gratuitously reach constitutional issues simply because plaintiffs suggest it might be efficient to do so. But what would be the basis for a motion to quash? Failure to serve? Or it could be that it is too burdensome. Or it could be that the evidence needed is not as relevant to justify the burden of showing up. There's innumerable ways. Arizona law is similar to federal law and makes available almost all of the same grounds that you can move to strike. Arizona law also creates a cause of action for abusive process that could be used to remedy any abusive process, including subpoenas. We notably raised that in our brief, and there was no response to it in the reply brief. So we think that legal remedies are quite adequate. I think if you look, for example, to the Leach case, which I believe the opposing counsel described as a farce of different proportions, every single individual motion to quash was granted. Does this have anything to do with a facial challenge? I think it certainly does, Your Honor, in that in order to prevail on a facial challenge, now it is relaxed because it's First Amendment, but they would have to show that the act has no plainly legitimate suite. And where the act is used in plainly legitimate ways, then a facial challenge to it necessarily fails. I think you can see that in the Stanwitz case, for example, which also shows why this act is needed. Even with the act and, you know, the claim by plaintiffs is we don't need the statute in order to make people show up. But in the Stanwitz case, even with the statute in force, all 18 circulators refused to appear. They made almost no effort to even, or allowed them to even concede. And so that's very powerful evidence. The act is not only needed, but if anything, it's insufficient force to actually satisfy the state's ability to get people to show up that they promised to do. If we were to decide that this was a violation, a constitutional violation, can you succeed with the other grounds? Or are you dead? No, I think we can, Your Honor. You know, certainly they still have to show irreparable harm. We've cited a number of cases that require them to show irreparable harm. The district court expressly found that the harms were only speculative. And plaintiffs have failed to even argue that that factual finding was clearly erroneous. We also have the balance of equities to find, you know, the third and fourth winter factors. Notably, the Purcell case tells you that those alone can require denial of a preliminary injunction in election cases. The district courts expressly balance the equities here, concluded that injunctive abuse should not issue, and plaintiffs have not even made an argument that that conclusion was an abuse of discretion. My question was more along, if we actually were to decide that this was a violation, then wouldn't that really outweigh the other factors, or not? I don't believe so, Your Honor. Those other factors are independent requirements of injunctive relief. And unless all four winter factors are satisfied, injunctive relief may not issue. Ninth Circuit doesn't use the sliding scale test? It does use the sliding scale test. It uses it as a refinement of the winter standard that has survived so far. But notably, the requirement that irreparable harm be likely has always been a hard core. That was the core holding of winter, and it has never been disturbed by this Court. You know, two final factors I think are worth highlighting. One, plaintiffs have never meaningfully grappled with the consequences of accepting their arguments. For example, Arizona law requires more signatures to get a constitutional amendment on the ballot than a mere statutory initiative. Under plaintiffs' arguments, that is an illegal content-based restriction of speech. No one's ever thought that, but that was the inescapable conclusion of their argument, which we raised in our answering brief, and went unanswered, and why? You know, other things like Arizona, and I believe my opposing counsel cited the Pest case. I may have lost sight of the facts in this case. It involves both initiatives and referendums, right? This case does involve, I believe, initiatives and referendums. Okay, all right. And so, I believe opposing counsel cited the Pest case. That notably upheld the single subject requirement, I believe, of Nevada law. That is a literal content-based restriction. Now, you may not think it's speech, or that you can't bring a claim outside of Anderson's verdict, but telling people that they can only talk about a single subject, and not more than one at a time, is a content-based restriction. And so, it wouldn't necessarily fall if plaintiffs' arguments were accepted. You know, finally, if I could have one final minute. Yes, make your last point, and then we'll have to move on. Thank you, Your Honor. Finally, it's worth noting that this court would have to create a square circuit split with the 10th and D.C. circuits reversed. The law at issue in Walker was far more obviously content-based than here, singling out initiatives regarding wildlife for uniquely disfavored treatment solely based on their content. And the law at issue in the Marijuana Policy Project was even worse, clearly being viewpoint-based, allowing those with a viewpoint of increasing marijuana-related penalties access to the ballot, while denying access to the ballot to those with the opposite viewpoints. I think this court would have to create a wholly unnecessary circuit split with those courts in order to reverse the order. And those courts would have heard that Ferman's is entirely appropriate. Okay. Thank you. Thank you, Your Honor. We'll have two minutes for rebuttal. We can't hear you. I can't hear you. Now... We can't hear you. No. Can't hear you. Can you hear me now? Yeah, now we can. Now we got you. This case is about a law that imposes a heightened penalty on a person participating in a specific kind of speech. The cases that taught that you cannot use your state power to regulate something like subpoena compliance based on the engagement of the speaker in a certain kind of speech before read included RAB from the Supreme Court, ACLU v. Las Vegas, VAE del Sol from this case. It's a mistake to look at Pratt's statement about circulators and initiatives and just look at it as just that statement. The problem here is a disparate penalty on speech that has always been something that triggers strict scrutiny. The plainly legitimate sweep argument doesn't apply to content-based infirmities. This is the point. You can regulate subpoena compliance. You just can't regulate it based on the speaker's communication of a certain kind of conduct. And Pratt, again, the court was very careful there to say they weren't even saying it wasn't a facial invalidation. They were looking at the evidence before them. And what was at issue in Pratt was frankly a regulation on the back end. I'm not even sure it was a direct regulation of speech. It simply said, you can pay them this way, you can't pay them that way. There was no evidence before the court that that actually hurt circulators. And I submit to you, circulators probably got paid more after. Because if you're not getting paid on a signature basis, you have to pay someone more to lure them in. Judge Hawkins, you asked for rational basis reviews. The fraud review is rejected in Buckley. The answer you were given is actually inconsistent with a case the state cites, Libertarian Party v. Houston, which indicates we are more concerned about fraud with nomination petitions because of the quid pro quo danger there with candidates, which just doesn't exist in the initiative context. And with that, Your Honor, I appreciate the court's time. Thank you very much. And thank you, counsel, very much. We appreciate your arguments this morning. The case is submitted. We'll take a five-minute recess.
judges: Hawkins, Paez, Restani